# UNITED STATES DISTRICT COURT
## for the
## Western District of Texas
## Austin Division

| | | |
|---|---|---|
| MERLIN TEST TECHNOLOGIES, INC., GREG BELCIK, derivatively on behalf of MERLIN TEST TECHNOLOGIES, INC., *Plaintiff* <br><br> v. <br><br> SHANGHAI HAOJIAQING INFORMATION TECHNOLOGY CO., LTD; XYZ COMPANY; GERARD IZQUIERDO; JIMMY XIANG; ZHEER HUANG; and Does 1 through 10, inclusive, *Defendant* | § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § | C.A. No. 1:23-cv-00982 |

---

## COMPLAINT AND JURY DEMAND

---

1.     Plaintiffs Merlin Test Technologies, Inc. ("Merlin U.S.") a Texas corporation, and Greg Belcik, derivatively on behalf of Merlin U.S. (collectively, "Plaintiff") by its undersigned counsel, hereby complains against Defendants, Shanghai Haojiaqing Information Technology Co. ("Shanghai Tech"), XYZ Company believed to be Infinitest ("Infinitest"), Gerard Izquierdo ("Izquierdo"); Jimmy Zheer ("Huang"); and Jimmy Xiang ("Xiang") (collectively, the "Defendants"), states the following for its complaint and jury demand.

## NATURE OF THE CASE

2.     This case arises out of past and ongoing efforts by the Defendants to steal talent, customers, trade secrets, confidential information, proprietary information, and intellectual property from Merlin U.S.

1

3.      Specifically, this lawsuit is configured to end an illegal pattern of racketeering, trade secret misappropriation by the Defendants and to seek relief from the ongoing and immediate violation of trade secret misappropriation.

4.      Defendants scheme is to take business opportunities from Merlin U.S. and Merlin China, Defendants have misappropriated Merlin U.S.'s trade secrets, stolen Merlin U.S.'s intellectual property, and conspired with several of Merlin U.S. and Merlin China's previous employees who later left to work at Shanghai Tech and/or Infinitest to unlawfully obtain Plaintiffs' protected confidential, proprietary and trade secret information, illegally transmit it through the use of Plaintiff's digital accounts, and use the information for their own benefit to the detriment of Merlin U.S. shareholders.  This ongoing scheme of unlawful activity has resulted in financial losses to the Merlin U.S., and deprived Merlin U.S. of the value of its trade secrets and other protected business information, resulting in great harm to Plaintiff.

5.      Shanghai Lingce Technology Co., Ltd., a/k/a Shanghai Merlin Test Technologies Co., Ltd ("Merlin China") is a Chinese company operated in Shanghai, China.

6.      Merlin U.S. is a Texas corporation operating in Bastrop County, Texas.

7.      Since at least 2017, Merlin U.S. and Merlin China have been operating under a joint venture relationship and agreement.  [**Ex. 1,** English language version of the Joint Venture Agreement]**.**  [**Ex. 2**, Chinese language version of the Joint Venture Agreement].

8.      The Joint Venture Agreement specified Party A and Party B as set forth in the table below.  In addition, the joint venture agreement further required that Merlin US would be a wholly owned subsidiary of the joint venture.  The joint venture is Merlin China.

| Merlin Technologies Shanghai Co., Ltd ("Merlin China") | | Merlin U.S. |
|---|---|---|
| **Party A** | **Party B** | After setting up the joint venture, Party A and Party B agree to set up a Subsidiary company in Austin United States that is 100% invested and owned by the joint venture, according to US laws. |

| Yu Haibo | Lin Yue | |
| | Zheer Huang | |
| | Tu Sihan | |
| | Gerard Izquierdo | |
| | James Gremillion Morrison | |
| | Jonathan David Smith | |

9.    Under the joint venture agreement, Merlin Test Technologies, Inc. ("Merlin U.S.") was formed in Austin Texas on May 1, 2017.  [**Ex. 3**, Merlin U.S. corporate formation documents].

10.    Since Mr. Izquierdo, Mr. Xiang and Mr. Huang's departure from Merlin U.S. and Merlin China and founding of Shanghai Tech and/or Infinitest, other of Plaintiffs' employees have departed and gone to work for Shanghai Tech and/or Infinitest. Upon information and belief, these employees were solicited by Izquierdo, Xiang, and Huang at least in violation of Izquierdo's and Xiang's fiduciary duties and Merlin U.S. policies. Moreover, there is direct evidence of transferring and copying Merlin U.S. intellectual property from Plaintiffs' systems (including the copying of software documents and transfer of technical documents) to Shanghai Tech and/or Infinitest before the departure of Izquierdo and Xiang from working for Merlin U.S..

11.    Judicial intervention is required not only to hold Defendants responsible for their concerted campaign of misconduct and multi-millions of dollars that Merlin U.S. has been and will be damaged as a result of their conduct but also to prevent any further irreparable harm that will result from the continued misappropriation of Merlin U.S.'s customers, trade secrets, proprietary information, confidential information, and intellectual property.

## **PARTIES**

12.    Plaintiff Merlin U.S. ("Merlin U.S."), is a Texas corporation operating under a joint venture agreement with Shanghai Lingce Technology Co., Ltd.  ("Merlin China"), and has its principal place of business in Bastrop County, Texas.

13.    Plaintiff Greg Belcik (herein "Greg Belcik"), President of, and shareholder of Merlin U.S., and resides at 780 W. Lovell Gulch Rd., Woodland Park, CO 80863.

14.    Defendant Shanghai Haojiaqing Information Technology Co., Ltd (herein "Shanghai Tech" or "Defendant") is a Chinese company with its principal place of business in

Shanghai, China and may be served with process at Room 1207, 12th Floor, Building 1 Lane 2277 Zuchongzhi Road, Pudong New Area.

15.    Defendant XYZ Company believed to be Infinitest (herein "Infinitest"), on information and belief having a principal place of business somewhere in Texas.

16.    Defendant Gerard Izquierdo (herein "Izquierdo" or "Defendant") formerly was President of, a director of, and founding shareholder of Merlin U.S. and on information and belief is employed at or works for Shanghai Tech and resides in Bastrop County, Texas.

17.    Defendant Jimmy Xiang (herein "Xiang" or "Defendant") formerly worked at Merlin U.S. and on information and belief is employed at or works for Shanghai Tech and/or Infinitest, and resides at 8303 Bluebird Dr, Brown Summit, North Carolina 27214.

18.    Defendant Zheer Huang (herein "Huang" or "Defendant") is currently employed at Shanghai Tech and resides in China.

## JURISDICTION AND VENUE

19.    This Court has subject matter jurisdiction over the federal claims in this action pursuant to 28 U.S.C. § 1331, and over the state law claims pursuant to ancillary, pendent and supplemental jurisdiction, including under 28 U.S.C. § 1367.

20.    Jurisdiction is proper pursuant to 18 U.S.C. § 1965, which allows for nationwide jurisdiction pursuant to the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-1988.

21.    Defendants have also committed tortious and illegal behavior, as outlined below, that occurred in Bastrop County, Texas, and/or were specifically and purposefully aimed at harming Merlin U.S. in Bastrop County, Texas, thus subjecting the Defendants to this Court's general personal jurisdiction pursuant to due process and/or the Texas Long Arm Statute, Texas Civil Practices & Remedies Code § 17.042.

22.    Venue is proper in this district under 28 U.S.C. §§ 1391(a) and  (b) because: (1) a substantial part of the events giving rise to the claims occurred in the Western District of Texas; (2)

Izquierdo, Xiang, Huang, Shanghai Tech, and Infinitest are otherwise subject to personal jurisdiction in this venue.

## **GENERAL ALLEGATIONS**

### I.    **FACTUAL BACKGROUND**

23.    Since 2017, Merlin U.S. and Merlin China have been successful in developing and selling its semiconductor IC test equipment instruments, semiconductor test and analysis software and providing customer support services.

24.    Greg Belcik is the current President of Merlin U.S. and shareholder of Merlin U.S.

25.    Merlin U.S. is a wholly owned subsidiary of Merlin China.

26.    Merlin China is a joint venture between Parties A: Yu Haibo and Parties B: Lin Yue, Zheer Huang, Tu Sihan, Gerard Izquierdo, James Gremillion Morrison, and Jonathan David Smith.

27.    Izquierdo was an employee of Merlin U.S. and served as a President of, a Director of, and a minority shareholder of Merlin U.S. and also a named party of the joint venture Merlin China.

28.    Xiang was an employee of Merlin U.S. and served in the capacity providing Human Resource duties, Finance duties, and Sales duties outside of China, of Merlin U.S. and represented himself as an officer and director of Merlin U.S.

29.    Huang was an employee of Merlin China and served as an Application Engineering Manager and also a named party of the joint venture Merlin China.

30.    Merlin U.S. has developed valuable intellectual property and business directed toward semiconductor IC test equipment, software and related services.  Some of Merlin U.S. intellectual property, trade secrets, confidential and property information can be at least partially identified as follows (collectively herein, "Merlin U.S. Intellectual Property"):

     I.    Analysis of Software source code, including the following:
- a.    5G NR
- b.    WLAN
- c.    1xEV-DO reverse link
- d.    GSM
- e.    TD-SCDMA
- f.    CDMA2000R

    g.   UMTS
    h.   LTE-FDD/TDD

II.   Modulation waveform source code, including the following:
    a.   5G NR
    b.   WLAN
    c.   1xEV-DO reverse link
    d.   GSM
    e.   TD-SCDMA
    f.   CDMA2000R
    g.   UMTS
    h.   LTE-FDD/TDD

III.   API source code, including the following:
    a.   MT-RF110
    b.   MT-RF210
    c.   HPA-100
    d.   Hardware resource manager

IV.   Applications Source Codes

V.   System calibration software

VI.   All software belonging to Merlin U.S. resides in GitHub, a cloud-based software repository.

VII.   Hardware files (residing in GitHub, a cloud-based file hosting service)

VIII.   Microcontroller firmware source codes, including the following:
    a.   MT-RF110
    b.   MT-RF210
    c.   MT-HPA100

IX.   Design files, including Schematic files (resides in Altium cloud service) including the following:
    a.   MT-PCB-000-000-061 (all revisions)
    b.   MT-PCB-000-000-060 (all revisions)
    c.   MT-PCB-000-000-059 (all revisions)
    d.   MT-PCB-000-000-033 (all revisions)
    e.   MT-PCB-000-000-036 (all revisions)
    f.   MT-PCB-000-000-037 (all revisions)
    g.   MT-PCB-000-000-068 (all revisions)
    h.   Simulation files (resides in Dropbox)

X.   Hardware Designs (resides in Dropbox folder dropbox/BU/Engineering/Product development), including the following:
    a.   Block diagrams files
    b.   Concepts files
    c.   Component selection files

6

XI.   Software     Designs    (reside    in    Dropbox    folder dropbox/BU/Engineering/Internal    Software),   including   the following:
   a. Software requirement documents
   b. Installers
   c. Projects folders

31.    Izquierdo acknowledges each the foregoing identified Merlin U.S. Intellectually Property belongs to Merlin U.S.

32.    Merlin U.S. Intellectually Property also includes business information such as its customer lists and specific information for each customer. The specific information for each customer includes Merlin U.S. confidential and proprietary information about each customer's particular needs, each customer's preferences not publicly available, each customer's product and software requirements, each customer's contact information and related organization information, such information is learned through Merlin U.S. sale of products, services and business relationships.

## II.   MERLIN U.S. HAS POLICIES TO PROTECT ITS CONFIDENTIAL INFORMATION

33.    To protect and maintain the integrity of its trade secrets and other confidential and proprietary information, Merlin U.S. has detailed confidentiality policies that are set forth in its Employee Handbook under General Employment at Section 2.7 and Employee conduct at Section 6.3. The Employee Handbook provides, *inter alia*,

**2.7 Confidentiality**

Merlin Test Technologies takes the protection of Confidential Information very seriously. "Confidential Information" includes, but is not limited to, computer processes, computer programs and codes, customer lists, customer preferences, customers' personal information, company financial data, marketing strategies, proprietary production processes, research and development strategies, pricing information, business and marketing plans, vendor information, software, databases, and information concerning the creation, acquisition or disposition of products and services.

Confidential Information also includes the Company's intellectual property and information that is not otherwise public. Intellectual property includes, but is not limited to, trade secrets, ideas, discoveries, writings, trademarks, and inventions developed through the course of your employment with Merlin Test Technologies and as a direct result of your job responsibilities with Merlin Test Technologies. Wages and other conditions of employment are not considered to be Confidential Information.

To protect such information, employees may not disclose any confidential or non-public proprietary information about the Company to any unauthorized individual. If you receive a request for Confidential Information, you should immediately refer the request to your supervisor.

The unauthorized disclosure of Confidential Information belonging to the Company, and not otherwise available to persons or companies outside of Merlin Test Technologies, may result in disciplinary action, up to and including termination of employment. If you leave the Company, you may not disclose or misuse any Confidential Information.

This policy is not intended to restrict an employee's right to discuss, or act together to improve, wages, benefits and working conditions with co-workers or in any way restrict employees' rights under the National Labor Relations Act.

Questions regarding this policy should be directed to the Manager.

[**Ex. 4**, Merlin U.S. Employee Handbook at 2.7 at p. 7.]

34.     Section 6.3 of the Employee Handbook has similar provisions as set forth in Section 2.7 and not reproduced herein.

35.     The Merlin U.S. Employee Handbook further sets forth expected Standards of Conduct under Section 6.1 as follows:

**6.1 Standards of Conduct**

Merlin Test Technologies's rules and standards of conduct are essential to a productive work environment. As such, employees must familiarize themselves with, and be prepared to follow, the Company's rules and standards.

While not intended to be an all-inclusive list, the examples below represent behavior that is considered unacceptable in the workplace. Behaviors such as these, as well as other forms of misconduct, may result in disciplinary action, up to and including termination of employment:

- Theft or inappropriate removal/possession of property
- Falsification of timekeeping records
- Possession, distribution, sale, transfer, manufacture or use of alcohol or illegal drugs in the workplace
- Fighting or threatening violence in the workplace
- Making maliciously false statements about co-workers
- Threatening, intimidating, coercing, or otherwise interfering with the job performance of fellow employees or visitors
- Negligence or improper conduct leading to damage of company-owned or customer-owned property
- Violation of safety or health rules
- Smoking in the workplace
- Sexual or other unlawful or unwelcome harassment
- Excessive absenteeism
- Unauthorized use of telephones, computers, or other company-owned equipment on working time. Working time does not include break periods, meal times, or other specified periods during the
  workday when employees are not engaged in performing their work tasks.
- Unauthorized disclosure of any "business secrets" or other confidential or non-public proprietary information relating to the Company's products, services, customers or processes. *Wages and other conditions of employment are not considered to be confidential information.*

This policy is not intended to restrict an employee's right to discuss, or act together to improve, wages, benefits and working conditions with co-workers or in any way restrict employees' rights under the National Labor Relations Act.

Other forms of misconduct not listed above may also result in disciplinary action, up to and including termination of employment. If you have questions regarding Merlin Test Technologies's standards of conduct, please direct them to your supervisor or the Manager.

[**Ex. 4**, Merlin U.S. Employee Handbook at 6.1 at p. 15].

   36.  The Joint Venture Agreement also has provisions configured to protect and maintain the integrity of its trade secrets and other confidential and proprietary information, for example, Section 1.6 and Section 6.1.3 each specify the following:

9

      1.6  "Confidential information" shall mean the technology, data, process, procedure, manual, pictures, photos, reports, inventories, ideas, etc., and the relevant operation team and members for the company, including technical, engineering, operation, finance, commercial and other areas, when they are defined as "confidential" by any party or relevant people. But the confidential information doesn't include the released information by public literature now or later.

[**Ex. 1,** English language version of the Joint Venture Agreement at 1.6 at pp. 1-2.]

      6.1.3  Keep confidential for all confidential information. Prevent the disclosure of confidential information (except the requirement by law).

[**Ex. 1,** English language version of the Joint Venture Agreement at 6.1.3 at p. 8.]

## III.    DEFENDANTS' UNLAWFUL SCHEME TO STEAL MERLIN U.S.'s EXPERTISE, CONFIDENTIAL INFORMATION, PROPRIETARY INFORMATION, TRADE SECRETS, AND CUSTOMERS

    37.    Izquierdo started acting unilaterally without Merlin U.S. Board of Directors Approval on a variety of decisions for his own personal benefit and to the determinant of shareholders.

    38.    Izquierdo's unilateral actions include issuing Merlin U.S. shares, buying back Merlin U.S. shares and valuing Merlin U.S. shares without Board approval.

    39.    On or about October 2017, Izquierdo promised to grant 450,000 shares of Merlin U.S. common stock to Greg Belcik.  He later memorialized this promise with a Written Consent in Lieu of Meeting of the Board document stating he had Board approval without obtaining Board approval.  [**Ex. 5**, Written Consent in Lieu of Meeting of the Board Directors dated April 10, 2023].

    40.    On information and belief, Izquierdo and Xiang begin to implement their plan to devalue Merlin U.S. by at least repurchasing Merlin U.S. shares to cash strap Merlin U.S. and put financial pressure on other shareholders.

    41.    Izquierdo without Board approval arbitrary assigns a value to Merlin U.S. to achieve a desired stock value for an unauthorized stock purchase of Jim Morrison's shares.  On March 20, 2020, Izquierdo sent an email to Jim Morrison regarding a draft of the "Resolutions Authorizing

Redemption" and the "Redemption Agreement", illustrating Izquierdo's awareness of needing the Board approval for a share transaction.  [**Ex. 6**, Email and related attachments dated March 20, 2020].

42.     On March 23, 2020, Izquierdo unilaterally without Board approval signed the Redemption Agreement, but failed to get the Resolution Authorizing Redemption signed or approved by the Board.  [**Ex. 7**, Redemption Agreement dated March 23, 2020].

43.     On April 27, 2020, Izquierdo signs a Merlin U.S. company check for $60,000 to buy back Jim Morrison's shares in an attempt to cash strap Merlin U.S., gain more share of Merlin U.S., and ultimately devalue Merlin U.S.

44.     On July 3, 2020, a Board Meeting for Merlin China was held to decide roles and responsibilities of Merlin U.S.  [**Ex. 8**, BoD minutes dated July 3, 2020].

45.     On August 25, 2020, Izquierdo and Xiang take additional steps to implement their plan to devalue Merlin U.S. and Merlin China for their own personal benefit and to the detriment of the shareholders in an attempt to force shareholders to sell their shares for a discounted price. Izquierdo sends an email referring to shareholders of Merlin U.S. complaints about cash strapping Merlin U.S. where he states, "[w]e need to keep backing him into the corner … and he will eventually … sell their shares for Merlin Test."  [**Ex. 9**, Email dated August 25, 2020].

46.     In or around September 2020, without Board consent or approval, Izquierdo again arbitrary assigns a value to Merlin U.S. to achieve a desired stock value for an unauthorized stock purchase of Jonathan Smith's shares.  Izquierdo unilaterally without Board approval signs another Redemption Agreement this time repurchasing Jonathin Smith's shares for $93,000.  [**Ex. 10**, Redemption Agreement dated September 30, 2020].

47.     Izquierdo and Xiang both understood that buying Jim Morrison's shares and Jonathan Smith's shares intentionally damaged Merlin U.S. by liquidating cash reserves of about $153,000 and ultimately the value of Merlin U.S. shares, which is part of Izquierdo and Xiang's plan to continue to devalue Merlin U.S. in order buyout shareholders at a lower price.

48.     At this stage, Izquierdo and Xiang wanted total control of Merlin U.S. at a discounted price to the determinant of the existing shareholders.

**A. Izquierdo Tanks the First Deal for Acquisition of Merlin U.S.**

49.     Beginning in 2022 Merlin U.S. and Merlin China started receiving bids to purchase Merlin U.S. and Merlin China. Merlin U.S. started negotiations with Beijing HuaFeng Test & Control Co., Ltd., a publicly traded Chinese company to acquire both Merlin U.S. and Merlin China. During various meetings and negotiations Izquierdo worked to sabotage the deal by at least preventing Merlin U.S. to present integration details to any acquisition would be successful.

50.     In and around March 2022, a first offer to buy Merlin U.S. and Merlin China was proposed for about $59,000,000 USD ("First Deal"). Izquierdo unilaterally rejected and destroyed the First Deal without Board approval or shareholder approval to the determinant of the shareholders.

51.     Izquierdo also admits to unilaterally rejecting and tanking the First Deal allegedly because of a value adjustment mechanism ("VAM") that was part of the First Deal. However, Izquierdo had no authority to reject the First Deal, pull the plug, stop negotiations, and destroy the opportunity to the determinant of the shareholders. [**Ex. 11**, Excerpt of a Power Point Presentation dated August 17, 2023].

52.     On May 25, 2022, Izquierdo and Xiang offered a new employee, Maxwell Sun, which included 5% of the total of Merlin U.S. employee shareholder shares. There shares offered to Hua Sun was done without Board approval. [**Ex. 12**, email dated May 25, 2022, including Hua Sun Job Offer].

**B. Izquierdo Tanks the Second Deal for Acquisition of Merlin U.S.**

53.     Later in 2022, a second offer to buy Merlin U.S. from Beijing HuaFeng Test & Control Co., Ltd. was presented to Merlin U.S. ("Second Deal") The Second Deal did not include VAM. Izquierdo, again, unilaterally rejected the second offer without Board approval to the determinant of the shareholders. [**Ex. 11**, Excerpt of a Power Point Presentation dated August 17, 2023].

54.     On information and belief, the First Deal and the Second Deal would have been amounted to each of the shareholders receiving millions. [**Ex. 39,** Shareholder buyout details email dated May 20, 2022].

55.     On information and belief, tanking the First Deal and the Second Deal was also part of the Izquierdo and Xiang's plan in an attempt to gain total control of Merlin U.S. for pennies on the dollar.

56.     After tanking the First Deal and Second Deal, Izquierdo and Xiang continued working without Board approval, and moved forward with the other Defendants in their plan and scheme with to take control of Merlin U.S. and Merlin China for their own personal benefit to the determinant of the other shareholders.

57.     In an email of July 25, 2022, Izquierdo continues threating to move forward with his contingency plan of destroying Merlin U.S. and Merlin China if his personal demands of a buyout of all shares are not meet.  [**Ex. 13**, Email dated July 25, 2022].

58.     Also, part of Izquierdo's contingency plan is the continued devaluation of Merlin U.S. and Merlin China, for example, by withholding product and support to end customer among other destructive actions of Merlin U.S.

59.     On August 9, 2022, Izquierdo still while President for his own personal benefit moved forward with his contingency plan to devalue Merlin U.S. and Merlin China, for example, by requiring Merlin U.S. IT to cut access to a critical Inflow database which provides inventory management data, sales data, and customers data for Merlin China and Merlin U.S., thereby preventing Merlin U.S. and Merlin China operations to existing and new customers.  [**Ex. 14**, Text message from Izquierdo to Merlin U.S. IT dated August 9, 2022].

60.     In furtherance of Izquierdo and Xiang scheme they move forward with an attempt to finance a forced devalued buyout of existing shareholders.  [**Ex. 15**, Email and related Investor Documents dated September 7, 2022**].**

61.     On September 29, 2022, in furtherance of their scheme Izquierdo and Xiang now cancel multiple purchase orders for Merlin U.S. that were directed towards various systems, manufacturing components, thereby further devaluing Merlin U.S., costing Merlin U.S. thousands and thousands of dollars, and damaging Merlin U.S. shareholders.  [**Ex. 16**, Email from Xiang with PO cancellations dated September 29, 2022].

62.     Given Izquierdo's threats and continued actions harming Merlin U.S., Merlin China, and its shareholders, the majority shareholder of Merlin U.S. granted Lin Yue irrevocable proxy, in

an attempt to regain control and resume normal operations of Merlin U.S. [**Ex. 17**, Irrevocable Proxy dated March 19, 2023]. This was also necessitated by Izquierdo's refusal to turn over financial records of Merlin U.S. despite repeated requests. [**Ex. 18**, email from Y. Lin dated April 14, 2023].

VIII.    On March 27, 2023, in fear of being fired Izquierdo begins misappropriating Merlin U.S. physical and intellectual property by moving Merlin U.S. property including tools, inventory, intellectual property to his brother's ranch located in Navasota, TX.

63.    On March 28, 2023, and April 11, 2023, Izquierdo demanded exclusive administrative rights to the following Merlin U.S. digital accounts housing Merlin U.S. Intellectual Property:

    a.    Merlin U.S. GoDaddy Account.

    b.    Merlin U.S. GitHub Account.

    c.    Merlin U.S. Dropbox Account.

    d.    Merlin U.S. Inflow Account.

    e.    Merlin U.S. Altium Account.

    f.    Merlin U.S. SolidWorks Account No. 9000015190283139TJCSW75.

    g.    Merlin U.S. Circuithub  Account.

    h.    Merlin U.S. FrontPanel Account.

[**Ex. 19**, Izquierdo Admin request emails dated March 28, 2023, and April 11, 2023]

64.    Izquierdo also changed access and control effectively locking out Merlin U.S. for his own personal benefit and the benefit of the Defendants.

65.    On May 23, 2023, Izquierdo and Xiang, sold a Merlin U.S. product the APS-300 (SO-000145) to Shanghai Tech for an unprecedented low price and further the invoice failed to account for various required equipment charges. [**Ex. 20**, Sales Order Documentation dated May 26, 2023].

66.    As part of Izquierdo's plan, he continued to work with Xiang and Huang to have several employees resign from Merlin China and join Shanghai Tech.

67.     Izquierdo and Huang directed the resignations of at least nine employees from Merlin China and even drafted language for each of their resignations.  [**Ex. 21**, Email resignation correspondence dated March 27, 2023].

68.     On information and belief, the resigned employees are now employed with Shanghai Tech and/or Infinitest.

69.     Izquierdo begins to steal and transfer Merlin U.S. Intellectual Property to Shanghai Tech and/or Infinitest including Merlin U.S. hardware.  [**Ex. 22**, Email regarding transfer of intellectual property dated March 28, 2023].

70.     Haung, not an employee of Merlin U.S. or Merlin China at this time, emails Izquierdo and Xiang to request a creations of a Merlin U.S. email customer account for himself, so he can interface directly Merlin U.S. customers, on information and belief, to further sabotage the Merlin U.S. and Merlin China's relationship with their customers and ultimately taking the customers for Shanghai Tech. and/or Infinitest.  [**Ex. 41**, Email dated April 5, 2023].

71.     On or around June 2023, Izquierdo and Huang began copying software and masking the efforts to create a competitive product for Shanghai Tech and/or Infinitest.  [**Ex. 23**, Email regarding copying software dated June 12, 2023].

72.     On information and belief, the stolen software is used by Shanghai Tech and/or Infinitest to sell competitive products.

73.     On June 13, 2023, in a shareholder meeting that Izquierdo attended a new board of directors was approved.  [**Ex. 24**, Minutes of Special Meeting of Shareholders, June 13, 2023].

74.     On June 15, 2023, by Unanimous Written Consent of the Board, Izquierdo was terminated pursuant to Unanimous Written Consent of the Board of Directors of Merlin Test Technologies, Inc.  [**Ex. 40**, Merlin Test Technologies, Inc. Written Unanimous Consent of the Board of Directors dated June 15, 2023.]

75.     Thereafter, Belcik, a shareholder of Merlin U.S., was also made the president of Merlin U.S. Unanimous Written Consent of the Board of Directors. [**Ex. 40**, Merlin Test Technologies, Inc. Written Unanimous Consent of the Board of Directors dated June 15, 2023.]

76.     On June 16, 2023, U.S. Merlin sent and delivered in person a letter to Izquierdo outlining his termination, related rights and obligations.  A true and accurate copy the Employment

Termination and Related Rights and Obligation Letter is attached as [**Ex. 26**, Izquierdo Termination / Rights and Obligations Email dated 16, 2023.]

77.    On June 16, 2023, Izquierdo, or Xiang or both liquidated U.S. Merlin bank account by removing at least $47,000 without authorization.

78.    Izquierdo also refused to provide access to Merlin U.S.'s bank account and ADP account.  [**Ex. 37**, email from Izquierdo dated June 16, 2023.]

79.    After Defendant Belcik became president of Merlin U.S., Plaintiff immediately began threatening Merlin U.S. employees, and Belcik was on the telephone at the time dealing with the hostile situation. Due to the threats Merlin U.S. employees received which placed them in fear for their safety, Belcik elected to call the police department and wait for their arrival to avoid escalating the situation.

80.    As soon as the police arrived, Belcik accepted service. In fact, the intimidation and threats to Merlin U.S. employees at Plaintiff's direction continued from June 16, 2021, through June 23, 2021, until Plaintiff was issued a criminal trespass warning. [**Ex. 27**, Criminal Trespass Warning dated June 21, 2023.]

81.    The threatening and intimidating behavior included Plaintiff's son arriving onsite with a handgun [**Ex. 28**, photo of Plaintiff's son]; another son of Plaintiff arriving onsite and menacingly parking so close to Belcik's vehicle that he needed to get a police escort to his car at the end of the day; constant telephone calls, skype messages and text messages to Belcik [**Ex. 29** text messages from Plaintiff dates June 16, 2023]; and constant harassing and intimidating telephone calls to Merlin U.S. employees, including one employee who was pregnant at the time. [**Ex. 30**, June 16, 2023, Statement of R. Mosier, June 16, 2023, statement of L. Belcik]

82.    On information and belief, Izquierdo shredded a number of documents and further destroyed evidence prior to his exit from Merlin U.S.

83.    On June 29, 2023, Izquierdo was sent a demand letter to turn over access to Merlin U.S. accounts set forth herein and immediately promptly return to Merlin U.S. all its intellectual property, trade secrets, confidential and/or property information.  To date Izquierdo has failed to respond.  [**Ex. 31**, Izquierdo Demand Letter dated June 29, 2023.]

84.     Izquierdo has not returned any documents or provide access to Merlin U.S. digital accounts.

85.     In or around late June 2023, Xiang interferes with Merlin U.S. current operations negatively affecting end customers.  [**Ex 38**, Email from Xiang dated June 27, 2023].

86.     On July 9, 2023, Xiang sent an email resigning effective immediately.  [**Ex. 32**, Email from Xiang dated July 9, 2023.]

87.     On July 10, 2023, U.S. Merlin sent a letter to Xiang outlining his related rights and obligations given his resignation.  [**Ex. 33**, Xiang Rights and Obligations Email dated July 10, 2023.]

88.     On information and belief, the Defendants are in the process of developing products and software, and producing products and software are direct competition with Merlin U.S. products and software and these products and software include and are based on Merlin U.S. Intellectual Property.

89.     The Defendants have caused three more Merlin U.S. employees to resign in an attempt to acquire even more Merlin US. Intellectual Property.

90.     The Defendants and resigned employees will oversee the development of the new products based on stolen Merlin U.S. Intellectual Property.

91.     One of the new products includes a product will be a direct competitive product to Merlin U.S.  DPS 100 power supply product and will include stolen Merlin U.S. Intellectual Property.

92.     On August 17, 2023, Colin Howard resigned from Merlin U.S.  (**Ex. 34**, email from C. Howard dated August 17, 2023).

93.     On information and belief, Colin Howard has accepted a new position with Defendant's new company Infinitest and/or Shanghai Tech to work on directly competitive products and software that is based on Merlin U.S. Intellectual Property.

94.     On August 17, 2023, Gordon Roxburgh resigned from Merlin U.S.  (**Ex. 35**, email from G. Roxburgh dated August 17, 2023).

95.     On information and belief, Gordon Roxburgh has accepted a new position with Defendant's new company believed to be called Infinitest and/or Shanghai Tech to work on directly competitive products and software that is based on Merlin U.S. Intellectual Property.

96.     On August 17, 2023, Maxwell Sun resigned from Merlin U.S.  (**Ex. 36**, email from M. Sun dated August 17, 2023).

97.     Maxwell Sun has accepted a new position with Defendant's new company Infinitest and/or Shanghai Tech to work on directly competitive products and software that is based on Merlin U.S. Intellectual Property.

## CLAIMS

### Count One - Misappropriation of Trade Secrets
### Violation of Defend Trade Secrets Act 18 U.S.C. §§ 1832, 1836, et. seq.
### (Against all Defendants)

98.     Plaintiffs incorporate by reference the averments of paragraphs 1 through 97 above.

99.     As set forth more fully above, Merlin U.S. confidential, proprietary, and trade secret information includes, without limitation, Merlin U.S. Intellectual Property as set out herein above, hardware designs, software, customer lists, customer information, business information, and all such similar information necessary for Merlin U.S. to conduct its business in a competitive marketplace.

100.    Merlin U.S. trade secrets relate to products and services used in, or intended for use in, interstate commerce.

101.    Merlin U.S. trade secrets are of value to Shagha Tech and/or Infinitest and any of the Izquierdo, Xiang or Huang's companies not yet identified, as they are competitors of Merlin U.S., as is clearly demonstrated by the extent to which Defendants engaged in the gathering, misappropriation, and transfer of such information to representatives of Shanghai Tech and/or Infinitest and any of Izquierdo, Xiang or Huang's companies not yet identified and their efforts to conceal these actions.

102.    Merlin U.S. keeps its trade secrets from disclosure through all appropriate and necessary means, such that they were not generally known or available to individuals or entities outside of Merlin U.S.

18

103.    Merlin U.S.'s trade secrets revealed to Shagha Tech and/or Infinitest and any of the Izquierdo, Xiang or Huang's companies not yet identified are critical to the success of Merlin U.S.'s business and provide Merlin U.S. with a distinct competitive advantage in the marketplace of semiconductor IC test equipment, software and related technology.

104.    Defendants were aware that Merlin U.S.'s trade secrets were to be kept confidential and not to be disclosed to competitors, customers, and others.

105.    Defendants knew that the information being obtained from Merlin U.S. computers, digital accounts, and other sources was confidential and in the nature of trade secrets and, nevertheless, Defendants have chosen to receive and utilize the same.

106.    As further set forth above, Defendants misappropriated Merlin U.S. trade secrets by acquiring them through unlawful means, and with intent to convert them, and/or disclosing and using them on behalf of Merlin U.S. competitors and in derogation of Merlin U.S.'s interest, and continuing to retain possession of them to this day, all in violation of the Defend Trade Secrets Act, 18 U.S.C. §§ 1832, 1836, et seq.

107.    Merlin U.S. trade secrets have been transferred to and maintained by Defendants on computers and other electronic devices.

108.    Merlin U.S. trade secrets remain in the possession of Defendants.

109.    Defendants have combined Merlin U.S.'s trade secrets into various documents of Defendants, and therefore, Merlin U.S. cannot uncover the full extent of Defendants' theft and misappropriation of Merlin U.S. trade secrets without a forensic examination of Defendants computers and other electronic devices.

110.    Because Defendants continue to use Merlin U.S.'s confidential, proprietary, and trade secret information, along with electronic records, documents and continue to prevent access to some of Merlin U.S. digital accounts such as GitHub, Dropbox, and GoDaddy, Defendants' misappropriation of Merlin U.S. trade secrets is continuing and ongoing.

111.    As a direct and proximate cause of Defendants' wrongful conduct, Merlin U.S. has suffered and will continue to suffer incalculable financial losses, imminent and permanent irreparable harm, loss of the confidentiality of their trade secrets, loss of goodwill, loss of business opportunities, and other continuing harm.

112. In addition, Defendants' dissemination of Merlin U.S.'s confidential, proprietary, and trade secret information into the industry unjustly enriched third parties, including other competitors of Merlin U.S.

113. The losses and harm to Merlin U.S. are ongoing and cannot be remedied by damages alone.

114. Merlin U.S. has no adequate remedy at law for sufficient compensation for the wrongs committed by Defendants.

115. Defendants have acted willfully, maliciously, and with reckless disregard to the rights of Merlin U.S.

**Count Two - Threatened Misappropriation of Trade Secrets**
**Violation of Defend Trade Secrets Act 18 U.S.C. §§ 1832, 1836, et. seq.**
**(Against all Defendants)**

116. Plaintiffs incorporate by reference the averments of paragraphs 1 through 116 above.

117. As set forth more fully above, Merlin U.S. confidential, proprietary, and trade secret information includes, without limitation, Merlin U.S. Intellectual Property as set out herein above, hardware designs, software, customer lists, customer information, business information, and all such similar information necessary for Merlin U.S. to conduct its business in a competitive marketplace.

118. Merlin U.S.'s trade secrets are of value to Defendants, who are competitors of Merlin U.S., as is clearly demonstrated by the extent to which the Defendants have engaged in the gathering, misappropriation, and transfer of such information to representatives of Shanghai Tech and/or Infinitest and any of Izquierdo, Xiang or Huang's companies not yet identified and their efforts to conceal these actions.

119. Merlin U.S. keeps their trade secrets from disclosure through all appropriate and necessary means, such that they were not generally known or available to individuals or entities outside of Merlin U.S.'s trade secrets revealed to Shanghai Tech and/or Infinitest and any of Izquierdo, Xiang or Huang's companies not yet identified are critical to the success of Merlin U.S.'s

business and provide Merlin U.S. with a distinct competitive advantage in the marketplace of semiconductor IC test equipment, software and related technology.

120.    Defendants were aware that Merlin U.S.'s trade secrets were to be kept confidential and not to be disclosed to competitors, customers, and others.

121.    Defendants knew that the information being obtained from Merlin U.S. computers, digital accounts, and other sources was confidential and in the nature of trade secrets and, nevertheless, Defendants have chosen to receive and utilize the same.

122.    As further set forth above, Defendants have threatened to misappropriate Merlin U.S.'s trade secrets through unlawful means, including but not limited to hiring multiple former employees of Merlin U.S. and Merlin China who were all tasked with developing Merlin U.S.'s confidential information regarding its semiconductor IC test equipment, software and related technologies. Defendants' en masse hiring of Plaintiffs' former employees who all worked on the same highly confidential projects is intended to result in those former employees disclosing Merlin U.S.'s trade secrets to Defendants.

123.    Upon information and belief, Defendants intend to further misappropriate and unlawfully use Plaintiffs' confidential trade secret information from Plaintiffs' former employees.

124.    As a direct and proximate cause of Defendants' wrongful conduct, Merlin U.S. is threatened with incalculable financial losses, imminent and permanent irreparable harm, loss of the confidentiality of their trade secrets, loss of goodwill, loss of business opportunities, and other continuing harm.

125.    The threatened losses and harm to Merlin U.S. cannot be remedied by damages alone.

126.    Merlin U.S. has no adequate remedy at law for sufficient compensation for the wrongs committed by Defendants.

127.    Defendants have acted willfully, maliciously, and with reckless disregard to the rights of Merlin U.S. justifying an award of punitive or exemplary damages.

**Count Three – Conspiracy to Misappropriate Trade Secrets**
**Violation of Defend Trade Secrets Act 18 U.S.C. §§ 1832, 1836, et. seq.**
**(Against all Defendants)**

128.    Plaintiffs incorporate by reference the averments of paragraphs 1 through 127 above.

129.    On information and belief, Izquierdo, Xiang, Huang, and others (including Merlin U.S.'s employees who subsequently left to work at Shanghai Tech, Infinitest, and/or Izquierdo, Xiang or Huang's companies not yet identified) conspired collectively to misappropriate Merlin U.S.'s trade secrets with the intent to convert them, and specifically those that are related to products for use in interstate or foreign commerce.

130.    To this end, on information and belief, Defendants entered into one or more agreements with others for the purpose of defrauding Merlin U.S. and committing the conversion and misappropriation of Merlin U.S.'s confidential, proprietary, and trade secret information, and its intellectual property.

131.    On information and belief, Defendants have taken affirmative steps in furtherance of these conspiratorial agreements, proximately damaging Merlin U.S.

132.    On information and belief, Defendants, and several of Merlin U.S.'s employees who subsequently left to work at Shanghai Tech, Infinitest, and any of Izquierdo, Xiang or Huang's companies not yet identified had a meeting of the minds on the object or course of action, and at least one member of each conspiracy committed at least one unlawful, overt act to further the object or course of action. Merlin U.S. has suffered injury as a proximate result of these wrongful acts.

133.    As such, Merlin U.S. further requests that Izquierdo, Xiang, Huang, Shanghai Tech, Infinitest, and any of Izquierdo, Xiang or Huang's companies not yet identified be held jointly and severally liable for their acts, and be ordered to pay all actual and consequential damages resulting from their wrongful conduct.

134.    Because their actions in this conspiracy and the underlying torts were intentional, malicious, knowing, and grossly negligent, the award of exemplary damages is appropriate.


**Count Four - Misappropriation of Trade Secrets under Common Law**
**(Against all Defendants)**

135.    Plaintiffs incorporate by reference the averments of paragraphs 1 through 134 above.

22

136.    Plaintiffs are the owners of valid and enforceable trade secrets, including without limitation, Merlin U.S. Intellectual Property as set out herein above, hardware designs, software, customer lists, customer information, business information, and all such similar information necessary for Merlin U.S. to conduct its business in a competitive marketplace, which is used by Merlin U.S.'s business and presents an opportunity to obtain an advantage over competitors who do not know or use it.

137.    All of Merlin U.S.'s trade secrets were confidential, proprietary, and highly valuable secrets.

138.    Merlin U.S.'s trade secrets, as discussed in this Complaint, were not generally known nor readily ascertainable.

139.    Merlin U.S. took precautions to maintain the secrecy of its trade secrets, as identified above.

140.    Merlin U.S. also took reasonable precautions by specifically instructing Defendants not to make unauthorized use of its proprietary and confidential information.

141.    Defendants are well aware of his obligation to maintain the secrecy and confidentiality of Merlin U.S. trade secrets and to not allow unauthorized third parties to obtain access to Merlin U.S.'s trade secrets.

142.    On information and belief, Xiang, Huang, and Izquierdo are the founder, promoter, agent, and/or officer of Shanghai Tech, Infinitest and new company formed by them; thus, their knowledge of the confidential and proprietary nature of Merlin U.S.'s trade secrets are imputed to Shanghai Tech, Infinitest and any unidentified new company formed by them.

143.    Nevertheless, despite knowing this knowledge, Defendants utilized and disclosed Merlin U.S. trade secrets for their own gain to develop competing technology.

144.    Defendants have also used Merlin U.S. trade secrets to develop products that they plan to release for sale to the general public that will compete directly with the products being developed by Merlin U.S.

145.    Defendants' conduct was undertaken with full knowledge of Merlin U.S.'s rights.

146.    Defendants' misappropriation of Merlin U.S.'s trade secrets has caused and will continue to cause damage to Plaintiffs in an amount to be determined at trial, which exceeds $75,000.

147.    In addition, Defendants' dissemination of Merlin U.S. confidential, proprietary, and trade secret information into the industry unjustly enriched third parties, including other competitors of Merlin U.S.

148.    Defendants' conduct was malicious, deliberate, and willful, or in the alternative at least grossly negligent justifying an award of punitive or exemplary damages.

### Count Five - Misappropriation of Trade Secrets under Texas Uniform Trade Secrets Act (Against all Defendants)

149.    Plaintiffs incorporate by reference the averments of paragraphs 1 through 148 above.

150.    Plaintiffs' confidential, proprietary, and trade secret information includes, without limitation, Merlin U.S. Intellectual Property as set out herein above, hardware designs, software, customer lists, customer information, business information, and all such similar information necessary for Merlin U.S. to conduct its business in a competitive marketplace.  Accordingly, Plaintiffs are the owners of valid and enforceable trade secrets that meet the requirements under the Texas Uniform Trade Secrets Act.

151.    Defendants misappropriated Merlin U.S.'s trade secrets for reasons herein. Defendants utilized and disclosed Plaintiffs' trade secrets for their own gain to develop competing technology that they plan to release for sale to the general public that will compete directly with the products being developed by Merlin U.S.

152.    Defendants' conduct in misappropriating Merlin U.S.'s trade secrets was malicious, deliberate, and willful, or in the alternative at least grossly negligent justifying an award of punitive or exemplary damages and attorneys' fees.

153.    Defendants' misappropriation of Plaintiffs' trade secrets has caused and will continue to cause damage to Merlin U.S. in an amount to be determined at trial, which exceeds $75,000.

154.    In addition, on information and belief, Defendants' dissemination of Merlin U.S.'s confidential, proprietary, and trade secret information into the industry unjustly enriched third parties, including other competitors of Plaintiffs.

### Count Six - Threatened Misappropriation of Trade Secrets under Texas Uniform Trade Secrets Act (Against Defendants)

155.    Plaintiffs incorporate by reference the averments of paragraphs 1 through 154 above.

156.    As set forth more fully above, Plaintiffs' confidential and proprietary trade secrets include, without limitation, Merlin U.S. Intellectual Property as set out herein above, hardware designs, software, customer lists, customer information, business information, and all such similar information necessary for Merlin U.S. to conduct its business in a competitive marketplace. Accordingly, Plaintiffs are the owners of valid and enforceable trade secrets that meet the requirements under the Texas Uniform Trade Secrets Act.

157.    Merlin U.S. trade secrets are of value to Shagha Tech and/or Infinitest and any of the Izquierdo, Xiang or Huang's companies not yet identified, as they are competitors of Merlin U.S., as is clearly demonstrated by the extent to which Defendants engaged in the gathering, misappropriation, and transfer of such information to representatives of Shanghai Tech and/or Infinitest and any of Izquierdo, Xiang or Huang's companies not yet identified and their efforts to conceal these actions.

158.    Merlin U.S. kept their trade secrets from disclosure through all appropriate and necessary means, such that they were not generally known or available to individuals or entities outside of Merlin U.S.

159.    Merlin U.S.'s trade secrets revealed to Shagha Tech and/or Infinitest and any of the Izquierdo, Xiang or Huang's companies not yet identified are critical to the success of Merlin U.S.'s business and provide Merlin U.S. with a distinct competitive advantage in the marketplace of semiconductor IC test equipment, software and related technology.

160.    Defendants were aware that Merlin U.S. trade secrets were to be kept confidential and not to be disclosed to competitors, customers, and others.

161.    Defendants knew that the information being obtained from Merlin U.S. computers, digital accounts, and other sources was confidential and in the nature of trade secrets and, nevertheless, Defendants have chosen to receive and utilize the same.

162.    As further set forth above, Defendants have threatened to misappropriate Merlin U.S.'s trade secrets through unlawful means, including but not limited to hiring multiple former employees of Merlin U.S. and Merlin China who were all tasked with developing Merlin U.S.'s confidential information regarding its semiconductor IC test equipment, software and related technologies. Defendants' en masse hiring of Plaintiffs' former employees who all worked on the same highly confidential projects is intended to result in those former employees disclosing Merlin U.S.'s trade secrets to Defendants.

163.    Upon information and belief, Defendants intend to further misappropriate and unlawfully use Merlin U.S.'s confidential trade secret information from Merlin U.S.'s former employees.

164.    As a direct and proximate cause of Defendants' wrongful conduct, Merlin U.S. is threatened with incalculable financial losses, imminent and permanent irreparable harm, loss of the confidentiality of their trade secrets, loss of goodwill, loss of business opportunities, and other continuing harm.

165.    The threatened losses and harm to Merlin U.S. cannot be remedied by damages alone.

166.    Merlin U.S. has no adequate remedy at law for sufficient compensation for the wrongs committed by Defendants.

167.    Defendants have acted willfully, maliciously, and with reckless disregard to the rights of Merlin U.S. justifying an award of punitive or exemplary damages.

**Count Seven - Conspiracy to Misappropriate Trade Secrets**
**Texas Uniform Trade Secrets Act**
**(Against Defendants)**

168.    Plaintiffs incorporate by reference the averments of paragraphs 1 through 167 above.

169.    On information and belief, Izquierdo, Xiang, Huang, and others (including Merlin U.S.'s employees who subsequently left to work at Shanghai Tech, Infinitest, and/or Izquierdo, Xiang or Huang's companies not yet identified) conspired collectively to misappropriate Merlin U.S.'s trade secrets with the intent to convert them.

170.    To this end, on information and belief, Defendants entered into one or more agreements with others for the purpose of defrauding Merlin U.S. and committing the conversion and misappropriation of Merlin U.S.'s confidential, proprietary, and trade secret information, and its intellectual property.

171.    On information and belief, Defendants have taken affirmative steps in furtherance of these conspiratorial agreements, proximately damaging Merlin U.S.

172.    On information and belief, Defendants, and several of Merlin U.S.'s employees who subsequently left to work at Shanghai Tech, Infinitest, and any of Izquierdo, Xiang or Huang's companies not yet identified had a meeting of the minds on the object or course of action, and at least one member of each conspiracy committed at least one unlawful, overt act to further the object or course of action.

173.    Merlin U.S. has suffered injury as a proximate result of these wrongful acts.

174.    As such, Merlin U.S. further requests that Izquierdo, Xiang, Huang, Shanghai Tech, Infinitest, and any of Izquierdo, Xiang or Huang's companies not yet identified be held jointly and severally liable for their acts, and be ordered to pay all actual and consequential damages resulting from their wrongful conduct.

175.    Because their actions in this conspiracy and the underlying torts were intentional, malicious, knowing, and grossly negligent, the award of exemplary damages is appropriate.

**Count Eight - Conspiracy to Commit Computer Fraud and Abuse Act ("CFAA")**
**(Against Defendants)**

176.    Plaintiffs incorporate by reference the averments of paragraphs 1 through 175 above.

177.    Merlin U.S.'s computers and digital accounts are protected computers for purposes of the CFAA, because they are used in or affect interstate or foreign commerce.

178.    In violation of the Izquierdo, Xiang, Huang, Shanghai Tech, and Infinitest conspired with others, including but not limited to those who were employed at Merlin U.S., and acting in concert with Shanghai Tech and Infinitest, to knowingly and with intent to defraud exceed their authorized access to Merlin U.S. protected computers by transferring information from Merlin U.S. protected computers and preventing digital access to Merlin U.S. accounts including the Merlin U.S. GoDaddy Account, Merlin U.S. GitHub Account, Merlin U.S. Dropbox Account, Merlin U.S. Inflow Account, Merlin U.S. Altium Account, Merlin U.S. SolidWorks Account No. 9000015190283139TJCSW75. Merlin U.S. Circuithub Account and Merlin U.S. FrontPanel Account.

179.    By intentionally conspiring with former Merlin U.S. employees to access Merlin U.S. protected computers without authorization and/or exceeding the scope of their authorized access and obtaining information from Merlin U.S.'s protected computers and accounts directly and indirectly, Defendants violated the CFAA.

180.    As a direct and proximate cause of Defendants' unlawful conduct, U.S. Merlin has suffered damages in excess of $5,000.00 for each year in which the conduct has occurred.

181.    However, as a direct and proximate cause of Defendants' unlawful conduct, Merlin U.S. has also suffered and will continue to suffer incalculable financial losses, imminent and permanent irreparable harm, loss of the confidentiality of their trade secrets, and other continuing harm. The losses and harm to Merlin U.S. is ongoing and cannot be remedied by damages alone as account access is still restricted.

**Count Nine – RICO  Conduct of a RICO Enterprise - 18 U.S.C. §§ 1961 (5),  1962(d)**
**(Against Defendants)**

182.    Plaintiffs incorporate by reference the averments of paragraphs 1 through 181 above.

183.    At all relevant times, Defendants Izquierdo, Xiang and Huang are each "person[s]" within the meaning of 18 U.S.C. §§ 1961(3) and 1962 (c).

184.    At all relevant times, Defendants Shanghai Haojiaqing Information Technology Co., Ltd and Infinitest constitute "enterprises" within the meaning of 18 U.S.C. §§ 1961 (4).

185.    At all relevant times, Defendants were engaged in, and/or their activities affected interstate commerce and/or foreign commerce within the meaning of 18 U.S.C. § 1962 (c).

186.    As set forth above, Defendants were involved in a scheme to defraud Merlin U.S. by committing a series of unlawful acts which constitute predicate racketeering acts under 18 U.S.C. § 1962(c) over a prolonged period of time and multiple nefarious bad acts that are ongoing.

187.    During this scheme to defraud Merlin U.S., Defendants committed predicate acts of racketeering activity, as defined in 18 U.S.C. § 1961(1) and (5) and 1962 (c), through multiple instances of mail fraud on multiple occasions and in violation of various federal statutes, including the Defend Trade Secrets Act, 18 U.S.C. §§ 1832, 1836, et seq., and the federal Wire Fraud statutes, 18 U.S.C. §§ 1341 and 1343 and other predicate acts of racketeering activity described herein.

188.    On information and belief, for over a year and in a plan which is ongoing, Defendants worked in concert with one another, committing numerous and repeated violations of the above federal statutes to defraud Plaintiffs and harm Plaintiffs economically.

189.    At various points in time, Defendants misappropriated confidential, proprietary, and trade secret information of Plaintiffs through unlawful means, in violation of the DTSA.

190.    Specifically, Defendants took and/or conspired with third parties to take confidential, proprietary, and trade secret information by downloading, stealing, copying without access, and sending it by electronic media - all in violation of the DTSA.

191.    As part of this scheme, Defendants conspired with each other to accomplish their illegal goals and stole or utilized Merlin U.S. computers, digital access and their digital accounts, and computerized protected business information, trade secrets, as well as hard copies of confidential drawings and other documents, and provided them to their new companies including Shanghai Tech, Infinitest and any other new company of Izquierdo, Xiang and Huang not yet identified.

192.    In perpetrating this scheme, Defendants used US Mail or private or commercial carriers, emails, the Internet, and wirings to accomplish many of their goals in several states and foreign countries.

193.    Specifically, in violation of the federal Wire Fraud statutes, Izquierdo conspired with other Defendants to email or upload onto a Cloud-based platform Merlin U.S.'s confidential, proprietary, and trade secret information and also steal access to Merlin U.S. digital accounts and

has refused to return access to these accounts including GitHub, Dropbox and others. Each of these digital accounts house Merlin U.S. trade secrets as described herein.

194.    In turn, this information was sent and/or used by Defendants for their advantage and to the disadvantage of Merlin U.S.

195.    Defendants used the mails and wires to transfer and download Merlin U.S.'s confidential, proprietary, and trade secret information to usurp Merlin U.S.'s business opportunities, existing and prospective contracts, and otherwise harm Merlin U.S.

196.    These transmissions were intentionally concealed from Merlin U.S. in order to defraud Merlin U.S. and to successfully deprive it of its proprietary information and harm it economically.

197.    Further, Defendants schemed to hire away numerous employees of Merlin U.S. in an effort to compete against them.

198.    During this time, these same Defendants communicated with one another by electronic means and across state lines not only to recruit Merlin U.S.'s employees, but also to take proprietary information from Merlin U.S.'s computers, cloud based accounts, digital accounts and other of Merlin U.S.'s information system.

199.    These acts were also perpetrated through the use of the wires, in violation of federal Wire Fraud statutes.

200.    Shanghai Tech and Infinitest and other unknown companies of Xiang, Izquierdo and Huang provided an enterprise through which Defendants carried out their fraudulent activities, as described above.

201.    Each of the predicate acts perpetrated by these same Defendants in furtherance of the scheme to defraud Merlin U.S. was performed by these same Defendants while participating in the conduct of the affairs of an enterprise in violation of 18 U.S.C. § 1962(c) - whether that enterprise be Shanghai Tech and Infinitest and other unknown companies of Xiang, Izquierdo and Huang, or an association-in-fact comprised of Xiang, Izquierdo, Huang and other employees of U.S. Merlin who departed U.S. Merlin as a result of the unlawful solicitation of Xiang, Izquierdo and Huang.

202.    As a direct and proximate result of the pattern of racketeering activity, by and through each of the unlawful acts recited herein, Merlin U.S. has been injured in their business and property, including, but not limited to, lost revenue and financial damages, trade secrets, drawings, intellectual property, protected business information, and equipment.

203.    Pursuant to 18 U.S.C. § 1962(c), Plaintiff are entitled to recover treble damages plus costs and attorneys' fees from Defendants as well as any other relief authorized by statute.

### Count Ten – RICO Conspiracy - 18 U.S.C. § 1962(c)
### (Against Defendants)

204.    Plaintiffs incorporate by reference the averments of paragraphs 1 through 203 above.

205.    All Defendants did conspire to acquire and maintain an interest in a RICO enterprise engaged in a pattern of racketeering activity, in violation of 18 U.S.C. §§ 1962 (b) and (d).

206.    Defendants knowingly agreed to facilitate a scheme, a conspiracy, to defraud Merlin U.S. through a pattern of interstate racketeering activity, which included the operation and/or management of a RICO enterprise, and calculated and premeditated intentionally to threaten continuity, *i.e.* a continuing threat of their respective racketeering activities also in violation of 18 U.S.C. § 1962(d).

207.    As set forth above, Defendants were involved in a scheme to defraud Merlin U.S. by committing a series of unlawful acts which constitute predicate racketeering acts under 18 U.S.C. § 1962(c) over a prolonged period of time and multiple nefarious bad acts that are ongoing.

208.    During this scheme to defraud Merlin U.S., Defendants jointly and severally committed two (2) or more predicate acts of racketeering activity, as defined in 18 U.S.C. § 1961(1), on multiple occasions and in violation of various federal statutes, including the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. §§ 1832, 1836, et seq., and the federal Wire Fraud statutes, 18 U.S.C. § 1343 and other predicate acts of racketeering activity described herein.

209.    On information and belief, for over a year and in a plan which is ongoing, Defendants worked in concert with one another, committing numerous and repeated violations of the above federal statutes to harm Plaintiffs economically.

210.    At various points in time, Defendants misappropriated trade secrets of Merlin U.S. through unlawful means, in violation of the DTSA.

211.    In perpetrating this scheme, Defendants used the Internet to accomplish many of their goals.

212.    Specifically, in violation of the federal Wire Fraud statutes, Defendants e-mailed or uploaded onto a Cloud-based platform countless Plaintiffs proprietary data.

213.    In turn, this information was sent and/or used by Defendants for their advantage and to the disadvantage of Merlin U.S.

214.    Defendants used the mails and wires to transfer and download Merlin U.S.'s confidential, proprietary, and trade secret information to usurp Merlin U.S.'s business opportunities, existing and prospective contracts, and otherwise harm Merlin U.S.

215.    Further, Defendants schemed to hire away numerous employees of Merlin U.S. in an effort to compete against them.

216.    During this time, these same Defendants communicated with one another by electronic means and across state lines not only to recruit Merlin U.S.'s employees, but also to take proprietary information from Merlin U.S.'s computers, cloud based accounts, digital accounts and other of Merlin U.S.'s information system.

217.    Each of the predicate acts perpetrated by these same Defendants in furtherance of the scheme to defraud Merlin U.S. was performed by these same Defendants while participating in the conduct of the affairs of an enterprise in violation of 18 U.S.C. § 1962(c) - whether that enterprise be Shanghai Tech and Infinitest and other unknown companies of Xiang, Izquierdo and Huang, or an association-in-fact comprised of Xiang, Izquierdo, Huang and other employees of U.S. Merlin who departed U.S. Merlin as a result of the unlawful solicitation of Xiang, Izquierdo and Huang.

218.    As a direct and proximate result of the pattern of racketeering activity, by and through each of the unlawful acts recited herein, Merlin U.S. has been injured in their business and property, including, but not limited to, trade secrets, drawings, intellectual property, protected business information, and equipment.

### Count Eleven – RICO Acquisition and Maintenance of an Interest in and Control of an Enterprise Engaged in a Pattern of Racketeering Activity - 18 U.S.C. § 1961 (5) 1962(b) (Against Defendants)

219.    Plaintiffs incorporate by reference the averments of paragraphs 1 through 218 above.

220.    Upon information and belief, Defendants, during the relevant periods, did cooperate jointly and severally in the commission of two (2) or more of the RICO predicate acts that are itemized in the RICO laws at 18 U.S.C. §§ 1962 (1)(A)and (B) and did so in violation of the RICO law at 18 U.S.C. § 1962 (b).

221.    By virtue of the predicate acts above described in this Complaint, including without limitations: laundering of money instruments, engaging in monetary business transactions improperly derived from unlawful activity, Defendants transferred, received, furthered and supplied financing and income that was derived, both directly and indirectly, from a pattern of racketeering activity in which each of them participated as a principal and used and invested, both directly and indirectly, such income and the proceeds of such income, in establishing, operating, and furthering other illegal enterprises in violation of 18 U./S.C. § 1962 (a).

222.    As a direct and proximate result of Defendants' violation of 18 U.S.C. § 1962 (a), Plaintiffs suffered the loss of valuable property, financial services and support, and suffered other business and pecuniary damages.

223.    Plaintiffs further allege that Defendants did commit two (2) or more of the offense itemized in this Complaint in a manner in which they calculated and premeditated intentionally to threaten continuity, *i.e.,* a continuing threat of their respective racketeering activities, also in violation of the RICO laws at 18 U.S.C. § 1962(b).

### Count Twelve – RICO Conduct and Participation in a RICO Enterprise through a Pattern of Racketeering Activity – 18 U.S.C. § 1962 (Against Defendants)

224.    Plaintiffs incorporate by reference the averments of paragraphs 1 through 223 above.

225.    All Defendants did associate with a RICO enterprise of individuals who were associated in fact and who engaged in, and whose activities did affect, interstate and foreign commerce.

226.    Likewise, all Defendants did conduct and/or participate, either directly or indirectly, in the conduct of the affairs of said RICO enterprise through a pattern of racketeering activity, all in violation oof 18 U.S.C. §§ 1961 (4), (5), (9), and 1962 (c).

227.    During all relevant periods, Defendants did cooperate jointly and severally in the commission of two (2) or more of the RICO predicate acts that are itemized in the RICO laws at 18 U.S.C. §§ 1962 (1)(A) and (B) and did so in violation of the RICO law at 18 U.S.C. § 1962(c).

228.    All Defendants did commit two (2) or more of the offense itemized above in a manner which they calculated and premeditated intentionally to threaten continuity, *i.e.*, a continuing threat of their respective racketeering activities., also in violation of 18 U.S.C. § 1962(c).

### Count Thirteen - Conversion
### (Against all Defendants)

229.    Plaintiffs incorporate by reference the averments of paragraphs 1 through 228 above.

230.    Defendants have wrongly taken and converted Merlin U.S.'s intellectual property for their own personal benefit despite Merlin U.S.'s demands that Defendants return this intellectual property.

231.    As a result of Defendants' conversion of Merlin U.S.'s property, Plaintiffs have suffered damages in an amount to be determined at trial, which exceeds $75,000.

232.    Defendants' conversion of Merlin U.S.'s property was done with fraud, malice, or gross negligence justifying an award of exemplary damages.

### Count Fourteen - Breach of Fiduciary Duty
### (Against Izquierdo and Xiang)

233.    Plaintiffs incorporate by reference the averments of paragraphs 1 through 232 above.

234.    Xiang was employee of Merlin U.S. and represented he was an officer and director at various times.

235.    At Merlin U.S. Xiang worked providing Human Resource duties, Finance duties, and Sales duties outside of China, and represented himself as an officer and director of Merlin U.S.

236.    In addition, Merlin U.S. trusted Xiang to use the information, training, and tools it provided him to assist the company with new technologies, customers, customer, lists and products which are the subject matter of Merlin U.S.'s trade secrets. Through his employment with Merlin U.S. Xiang owed fiduciary duties to Merlin U.S.

237.    Xiang's conduct as described herein constitutes a breach of at least the following fiduciary duties: duty of loyalty and utmost good faith, duty of candor, duty to refrain from self-dealing, duty to act with integrity of the strictest kind, duty of fair, honest dealing, and duty of full disclosure.

238.    As a result of Xiang's breach of his fiduciary duties, Merlin U.S. has suffered damages in an amount to be determined at trial, which exceeds $75,000.

239.    Izquierdo was formerly President of, a director of, and founding shareholder of Merlin U.S.

240.    Through his employment and relationship with Merlin U.S., Izquierdo owed fiduciary duties to Merlin U.S.

241.    Izquierdo's conduct as described herein constitutes a breach of at least the following fiduciary duties: duty of loyalty and utmost good faith, duty of candor, duty to refrain from self-dealing, duty to act with integrity of the strictest kind, duty of fair, honest dealing, and duty of full disclosure.

242.    As a result of Izquierdo's breach of his fiduciary duties, Merlin U.S. has suffered damages in an amount to be determined at trial, including but limited to tanking the First Deal and Second Deal exceeds $75,000.

### Count Fifteen - Breach of Fiduciary Duty
### (Merlin U.S. Derivative claim Against Izquierdo)

243.    Plaintiffs incorporate by reference the averments of paragraphs 1 through 242 above.

244.    Belcik, a shareholder for Merlin U.S., brings this claim derivatively, on behalf of Merlin U.S. against Izquierdo.

245.    Izquierdo formerly was President of, a director of, and a shareholder of Merlin U.S.

246.    Through his relationship with Merlin U.S., being an officer and director, and President, Izquierdo assumed fiduciary duties to Merlin U.S. and shareholders of Merlin U.S., including Greg Belcik.

247.    Izquierdo's conduct as described herein including tanking the First Deal and the Second Deal constitutes a breach of at least the following fiduciary duties: duty of loyalty and utmost good faith, duty of candor, duty to refrain from self-dealing, duty to act with integrity of the strictest kind, duty of fair, honest dealing, and duty of full disclosure.

248.    As a result of Izquierdo's breach of his fiduciary duties, Plaintiffs have suffered damages as a shareholder of Merlin U.S. in an amount to be determined at trial, including but limited to $75,000.


### Count Sixteen - Unjust Enrichment
### (Against Defendants)

249.    Plaintiffs incorporate by reference the averments of paragraphs 1 through 248 above.

250.    Defendants sought to be enriched and were enriched by their unlawful misappropriation of Merlin U.S.'s trade secrets and other confidential, proprietary, and trade secret information.

251.    In using Merlin U.S.'s confidential, proprietary, and trade secret information, Defendants were unjustly enriched by obtaining business and investment that they could not have obtained otherwise.

252.    Defendants improperly utilized such information for their own enrichment and to the detriment and harm of Merlin U.S., in derogation of their rights.

253.    Defendants are obligated to disgorge the benefits derived from their unlawful conduct, and to compensate Merlin U.S. in the amount of all wrongfully obtained business, profits, and benefits.

254.     Further, it would be unequitable, unfair, and unconscionable for the Defendants to be allowed to continue to benefit from their unlawful conduct without paying appropriate compensation to Merlin U.S.

255.     As a direct and proximate result of Defendants' conduct, Merlin U.S. have suffered and will continue to suffer incalculable financial loss, imminent and permanent irreparable harm, and the loss of the confidentiality of their proprietary business information and trade secrets, goodwill, business opportunities, and other damages.

256.     Merlin U.S. has no adequate remedy at law to compensate for the losses they have incurred and continue to incur as a result of Defendants' unlawful conduct.

### Count Seventeen - Common Law Civil Conspiracy
### (Against Defendants)

257.     Plaintiffs incorporate by reference the averments of paragraphs 1 through 256 above.

258.     On information and belief, Defendants, and others (including Merlin U.S. employees who subsequently left to work at Shanghai Tech and/or Infinitest and any of the Izquierdo, Xiang or Huang's companies not yet identified) conspired collectively to accomplish the unlawful purposes and torts discussed in this Complaint.

259.     To this end, on information and belief, Defendants entered into one or more agreements for the purpose of defrauding Merlin U.S. and committing the conversion and misappropriation of Merlin U.S.'s confidential, proprietary, and trade secret information, and its intellectual property.

260.     On information and belief, Defendants have taken affirmative steps in furtherance of these conspiratorial agreements, proximately damaging Merlin U.S.

261.     On information and belief, Xiang, Izquierdo, and Huang, and several of Merlin U.S.'s employees who subsequently left to work had a meeting of the minds on the object or course of action, and at least one member of each conspiracy committed at least one unlawful, overt act to further the object or course of action.

262.     Merlin U.S. suffered injury as a proximate result of these wrongful acts.

263.    As such, Merlin U.S. further request that Defendants be held jointly and severally liable for their acts, and be ordered to pay all actual and consequential damages resulting from their wrongful conduct.

264.     Because their actions in this conspiracy and the underlying torts were intentional, malicious, knowing, and grossly negligent, the award of exemplary damages is appropriate.

**Count Eighteen – Punitive Damages**
**(Against Defendants)**

265.    Plaintiffs incorporate by reference the averments of paragraphs 1 through 264 above.

266.    At all relevant times, Defendants owed Plaintiffs a duty to act with care and regard to Plaintiffs' rights and interests, including Plaintiffs' property and financial interests.

267.    Defendants breached that duty of care on more than one occasion and such breaches constitute outrageous conduct and reckless disregard of the rights and interest, including property and financial interests, of Plaintiffs.

268.    Defendants' outrageous conduct done with malice or bad motives and reckless indifference to Plaintiffs' interests.

269.    Accordingly, Defendants are liable for punitive damages to Plaintiffs in an amount to be proven at trial.

**CONDITIONS PRECEDENT**

270.    All conditions precedent to Plaintiff's requests for relief have been performed or have occurred or are legally excused.

**DISCOVERY RULE**

271.    To the extent Defendant raises the affirmative defense of limitations, Plaintiffs' claims are subject to the discovery rule because the nature of the injury was inherently undiscoverable, and the evidence of the injury was objectively verifiable.

## FRAUDULENT CONCEALMENT

272.    To the extent Defendant raises the affirmative defense of limitations, fraudulent concealment applies to defer the accrual period of Plaintiffs' claims because, as reflected in the allegations set forth above, (1) Defendants had actual knowledge of the wrong, (2) Defendants concealed the wrong by making a misrepresentation or by remaining silent when it had a duty to speak, (3) Defendants had a fixed purpose to conceal the wrong, and (4) Plaintiffs reasonably relied on the misrepresentation or silence.

## JOINT AND SEVERAL LIABILITY

273.    At all relevant times, Defendants were jointly engaged in the commission of the aforementioned tortious and unlawful actions. Each of the Defendants acted intentionally and their actions caused a single, indivisible injury to Plaintiffs. Accordingly, Defendants are jointly and severally liable for all of Plaintiffs' damages as plead herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully requests the following relief as discussed in the Complaint:

a) A declaration that Merlin U.S. own all legal title to the Merlin U.S. Intellectual Property and other Merlin U.S. intellectual property set forth herein;

b) Actual Damages in excess of the jurisdictional requirements of this court, royalties, unjust enrichment, and any other damages;

c) A reasonable royalty for Defendants' unauthorized disclosure and/or use of Plaintiffs' trade secrets;

d) Injunctive and other equitable relief, and an order for Defendants to immediately discontinue, making, using, offering for sale, or selling any product or service embodying the Merlin U.S. Intellectual Property and its trade secrets;

e) Preliminary and permanent injunctive relief, and specifically an Order directing Defendants to refrain from using and/or disclosing Plaintiffs' confidential, proprietary, and trade secret information and to cease doing business with all customers obtained, in whole or in part, through the use of Plaintiffs' confidential, proprietary, and trade secret information, and such other and further relief as this Court deems just;

f) Any multiple of damages permitted by statute;

g) All actual, economic, incidental, and "head-start" damages incurred by Plaintiffs as a result of Defendants' misappropriation of trade secrets and other tortious behavior;

h) Punitive, exemplary and statutory damages in excess of the jurisdictional requirements of this court;

i) Prejudgment and post-judgment interest;

j)  Attorneys' fees and costs pursuant to the terms of the Agreement;

k) Treble damages as consistent with 18 U.S.C. § 1962 (c) for the RICO violations against each defendant, jointly and severally;

l) Attorneys' fees and costs pursuant to Texas Civil Practices and Remedies Code 38.001;

m) Attorneys' fees and costs pursuant to Texas Civil Practices and Remedies Code 134A;

n) Attorneys' fees and costs pursuant to 5 U.S.C. § 552(a)(4)(E);

o) All available damages and remedies allowed under 15 U.S.C. 1117 including exceptional case damages; and

p) All available damages and remedies allowed under the common and statutory laws of the State of Texas for Defendants acts and omissions of unfair competition.

Plaintiffs further request all additional relief to which they may be legally and/or equitably entitled.

**JURY DEMAND**

Plaintiffs hereby request a trial by jury on all issues so triable by right.

Dated: August 21, 2023

Respectfully submitted,

*/s/ Kathleen J. Mowry*
Kathleen J. Mowry, SBN 24127004
Messner Reeves LLP
6465 Greenwood Plaza Blvd., Suite 650
Greenwood Village, CO 80111
Telephone:  (303) 623-1800
Facsimile:  (303) 623-0552

Scott J. Hawranek *(Pro Hac Vica in process of being filed)*
Messner Reeves LLP
14 North Sierra Madre Street, Suite A
Colorado Springs, CO 80906
Telephone:  (719) 344-9907
shawranek@messner.com

*Attorney for Plaintffs*

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing instrument was filed electronically with the United Stated District Court, Western District, Austin Division on August 21, 2023.

 */s/ Tara L. Nelson*
Tara L. Nelson

STATE OF     §
          §
          §
COUNTY OF    §

## **VERIFICATION**

BEFORE ME, the undersigned Notary Public, on this 21 day of August 2023 personally appeared Greg Belcik, who, being by me first duly sworn, depose and stated that he had read the foregoing COMPLAINT and JURY DEMAND, and that each and every factual statement contained therein is known by him to be true and correct.

_____
Greg Belcik

THE STATE OF      )
            )
COUNTY OF

Subscribed, sworn and acknowledged to me by Greg Belcik, this 21 day of August 2023.

My Commission Expires: ___06/15/2026___

STATE OF ___Texas___

_____
Notary Public

JAMES H HAAS
My Notary ID # 131601550
Expires June 15, 2026

{07603267 / 1}

-42-